IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AZTEC ABSTRACT & TITLE INSURANCE, INC.
a New Mexico Corporation,

    Plaintiff,

v.                                    No. 1:16-cv-0103

COMMONWEALTH LAND TITLE INSURANCE COMPANY,
a Pennsylvania Corporation, MAXUM SPECIALTY GROUP &
MAXUM INDEMNITY COMPANY, and
LYDICK ENGINEERS & SURVEYORS, a New Mexico
Corporation,

    Defendants.

## NOTICE OF REMOVAL

Defendant Maxum Indemnity Company ("Maxum") (incorrectly identified as the following separate entities in the case caption: "Maxum Specialty Group" and "Maxum Indemnity Company"),[1] pursuant to 28 U.S. C. §§1332, 1441, and 1446, hereby removes to this Court the state court action captioned *Aztec Abstract & Title Ins. Co. v. Commonwealth Land Title Ins. Co., Maxum Specialty Group & Maxum Indemnity Co. and Lydick Engineers & Surveyors,* No. D-101-CV-2015-02640, which action is presently pending on the docket in the First Judicial District Court, County of Santa Fe, State of New Mexico (the "state court action"). Maxum files this Notice without waiving any defenses, exceptions, or obligations that may exist in its favor in state of federal court.  As discussed below, this Court has subject matter jurisdiction over this action because diversity of citizenship exists between Aztec Abstract & Title Insurance, Inc. ("Aztec") and the only *properly joined* defendant, and because the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  In support of this removal, Maxum states as follows:

---

[1] Maxum Indemnity Company is the Maxum defendant to be named, if any.  Maxum Specialty Insurance Group is a trade name.  There is no legal entity known as Maxum Specialty Group.

I.      **INTRODUCTION AND BACKGROUND**

	1.	Aztec's Complaint alleges that it is in the business of providing title and escrow services for real estate closings in Roosevelt County, New Mexico and has an agency agreement with Defendant Commonwealth Land Title Insurance Company ("Commonwealth") which authorizes it to countersign and deliver title policies to individuals. Complaint, ¶¶ 7-8 (attached as part of Exhibit 1).

	2.	Aztec served as a closing agent for a mortgage and issued a lenders policy of title insurance to Excel in 2009. Aztec claims that prior to the closing, Excel required a new survey of property that was to secure the loan. Aztec allegedly retained Defendant Lydick Engineers & Surveyors ("Lydick") to prepare a survey of property.

	3.	During a foreclosure action, it was learned that there was an overlap of $\pm$ 1.965 acres between the property securing the Excel Mortgage and a mortgage executed in favor of Zions Bank a year earlier. The Zion's Bank mortgage was determined to have priority over the Excel mortgage, and Zions was entitled to foreclosure of its mortgage on the disputed $\pm$ 1.965 acres.

	4.	Aztec alleges that Commonwealth paid a claim on the title policy issued to Excel in the policy limits amount of $275,000 and expended $34,788.03 in costs and fees related to the foreclosure and made demand on Aztec to reimburse the sums. Complaint, ¶¶ 30-32.

	5.	Aztec now brings suit seeking a declaration that it did not act with gross negligence when it closed the Excel mortgage, such that it is not required to reimburse Commonwealth for the monies Commonwealth paid to Excel. Complaint, ¶¶ 33-41.

	6.	Aztec also purports to state a claim for indemnification against Lydick "in the event [Aztec] is held liable for any negligence on its part related to the closing of the Excel Mortgage." Complaint, ¶ 47.

	7.	Aztec asserts three insurance coverage claims against Maxum, which are styled: "Breach of Contract (Count III); "Bad Insurance Faith Claim" (Count IIV [sic]); and "Violation of the New Mexico Unfair Claims Practices Act" (Count V). These counts allege generally that

Aztec made demand on Maxum related to Commonwealth's claim and that Maxum failed to honors its obligations. *See generally,* Complaint, ¶¶ 48-68.

## II.   MAXUM HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

8. On December 14, 2015, Aztec filed the state court action.

9. Returns of Service in the state court action indicate that Defendant Commonwealth was served on January 11, 2016, and that Defendant Lydick was served on January 21, 2016.

10. The Office of the Superintendent of Insurance accepted service on behalf of Maxum on January 11, 2016. This Notice of Removal is timely as it is being filed within 30 days of service of the initial pleadings as required by 28 U.S.C. § 1446(b).

11. As required by 28 U.S.C. § 1446(a), Maxum attaches a copy of all process, pleadings, and orders served upon it, including summonses and petitions, as Exhibit 1.  As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Aztec and a copy is being filed with the First Judicial District Court.

12. Pursuant to 28 U.S.C. § 111, the United States District Court for the District of New Mexico is the federal jurisdiction encompassing the First Judicial District Court for Santa Fe County, New Mexico, where this lawsuit was originally filed.  Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

## III.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. §§ 1332 AND 1441

13. Removal is proper under 28 U.S.C. § 1332 because: (1) Plaintiff and the properly joined Defendant are diverse, and (2) Plaintiff's claims place more than $75,000 in controversy, exclusive of costs and interest.  *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).

**A. Complete Diversity Of Citizenship Exists Between The Properly-Joined Parties**

14. Aztec is a New Mexico corporation with its principal place of business in New Mexico. Complaint, ¶ 1. Therefore, Aztec is a citizen of the State of New Mexico for diversity purposes.

15. Aztec alleges that Defendant Commonwealth is a Pennsylvania corporation. Complaint, ¶ 2. Commonwealth's principal place of business in Florida. Therefore, under 28 U.S.C. § 1332(c)(1), Defendant Commonwealth is not a citizen of the State of New Mexico for diversity purposes. As discussed more fully below, however, Aztec's claims against Commonwealth have been procedurally misjoined with Aztec's claims against Maxum, such that the citizenship of Commonwealth is disregarded for the purpose of diversity analysis.

16. Aztec alleges that Defendants Maxum Specialty Insurance Group and Maxum Indemnity Group are non-resident corporations. Complaint, ¶¶ 3-4. Maxum is a Delaware Corporation with its principal places of business in Georgia. Therefore, under 28 U.S.C. § 1332(c)(1), Maxum is not a citizen of the State of New Mexico for diversity purposes.

17. The Complaint alleges (Compl. ¶ 5) that Defendant Lydick is a New Mexico corporation with a principal place of business in Clovis, New Mexico. As discussed more fully below, however, because Lydick has been fraudulently joined, its citizenship must be disregarded for the purpose of diversity analysis.

18. Because the Plaintiff *is* a citizen of New Mexico and the only properly joined Defendant is *not* a citizen of New Mexico, complete diversity exists between the relevant parties to this action.

**B. The Amount In Controversy Requirement Is Satisfied**

19. The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. The amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[I]n the absence of an explicit demand for more than $75,000, . . . the defendant may rely on an estimate of the potential damages from the allegations in the complaint." *McPhail v. Deere & Co.*, 529 F.3d

947, 955 (10th Cir. 2008) (citing *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)). "A complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal." *Id*

20. In this Circuit, a removing defendant must prove by a preponderance of the evidence the facts establishing that the amount in controversy exceeds $75,000. *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008).

21. Once a defendant has shown the facts establishing the amount in controversy, a case may be remanded "only if it is 'legally certain' that the recovery (from the plaintiff's perspective) . . . will be less than the jurisdictional floor." *Id.* at 955 (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

22. Aztec's complaint alleges that Commonwealth has paid a policy limits claim in the amount of $275,000 and also expended $34,788.03 and seeks a declaration that it is not required to reimburse it Commonwealth. Complaint, ¶¶ 30-32. Aztec further seeks indemnification and defense from Maxum for this same claim. Complaint, ¶ 52.

23. Therefore, based on based on based on Aztec's allegations, and without in any manner passing on the merits of Aztec's claims, the Court can reasonably conclude that the amount in controversy, exclusive of interest and costs, exceeds $75,000 and is consequently satisfied for "original jurisdiction" under 28 U.S.C. § 1332(a).

24. Even just as to Aztec's claims against Maxum, the amount in controversy is met. Without in any manner passing on the merits of the Aztec's claims, and only taking into account the kinds of compensatory damages and other recovery Aztec seeks, the Court can reasonably conclude that the Plaintiff's verdict could exceed $75,000. Aztec claims that Maxum wrongfully denied coverage (warranting compensatory damages), acted in bad faith (warranting punitive damages), and violated the New Mexico Unfair Practices Act (warranting statutory damages, which can include treble damages and attorneys fees). Complaint at Counts III, IV, and V.

25. The calculation of the amount in controversy includes both compensatory and punitive damages. *See, e.g., Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943); *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994). Punitive damages are recoverable in New Mexico for bad faith. *See, e.g., Jessen v. National Excess Ins. Co.*, 108 N.M. 625, 776 P.2d 1244, 1246 (1989) ("[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages). Juries in New Mexico, this Circuit and elsewhere have awarded large punitive sums against insurance companies in cases involving, inter alia, bad faith. *See, e.g., Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013 NMCA 013, 293 P.3d 954 (affirming award of $20,000 in additional compensatory damages for bad faith and $50,000 for punitive damages when $8,260.08 in contract damages claimed); *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir. 1993) (jury awarded $2 million for alleged bad faith refusal to pay total-loss automobile insurance claim); *Burge v. Mid-Continent Casualty Co.*, No. 92-5973 (New Mexico Second Judicial District Court 11/23/98 jury verdict of $957,400 for breach of contract, unfair claim practices and insurance bad faith); *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1114-15 (Okla. 1991) (jury awarded $2 million in punitive damages for alleged bad faith refusal to pay an underinsured motorist coverage claim); *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073 (Ariz. 1987) (jury awarded $3.5 million in punitive damages for bad faith, where compensatory damages were $15,000), cert. denied, 484 U.S. 874 (1987); *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 880 P.2d 300 (1994) (jury awarded [although punitive damages award was ultimately reversed] over $800,000 against insurer and agent for insurer's denial of payment for damage to a building destroyed by fire); *United Nuclear Corp. v. Allendale Mutual Insurance Co.*, 103 N.M. 480, 709 P.2d 649 (1985) (jury awarded [although award was ultimately reversed] $25 million in punitive damages and $3 million in attorneys' fees against insurer); *Curtiss v. Aetna Life Ins. Co.*, 90 N.M. 105, 560 P.2d 169 (Ct. App. 1976) (affirming $100,000 punitive damage award against insurer in individual bad faith action), cert. denied, 90 N.M. 7, 558 P.2d 619 (1976). A review of jury awards such as these has been sufficient to establish the propriety of removal jurisdiction in individual diversity cases. *Marrujo v. Swift Transportation Co.,* CIV No. 98-1222 BB/DJS,

mem. op. (D.N.M. Aug. 6, 1999) (denying remand of removed action based on defendant's analogy to jury verdicts in cases with similar alleged injuries); *see also Woodward v. Newcourt Commercial Finance Corp.*, 60 F.Supp.2d 530, 532 (D.S.C. 1999) (Plaintiff's "claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount").

26. Likewise, the availability of treble damages and attorneys' fees may also be considered in determining whether the amount in controversy is met. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337 (10th Cir. 1998). Trebling the so-called delay damages alone meets the $75,000 jurisdictional prerequisite. Both attorneys' fees and treble damages are recoverable under the New Mexico statutes pursuant to which Plaintiffs are suing. *See Salazar v. GEICO Ins. Co.*, 2010 U.S. Dist. LEXIS 52290 (D.N.M. April 27, 2010) (Judge Browning denying motion to remand uninsured motorist case); *Jamison v. State Farm Gen'l Ins. Co.*, No. CIV 98-1004 BB/RLP mem. op. (D.N.M. Dec. 7, 1998) (denying remand of removed action because, in part, "Attorneys' fees must be included when determining whether the amount in controversy exceeds the minimum jurisdictional amount for the invocation of federal jurisdiction," citing In re Abbott Lab., 51 F.3d 524 (5th Cir. 1995)); *see also, Miera v. Dairyland Insurance Co.*, No. 96-0136-M, Mem. Op. (D.N.M. Feb. 28, 1996) (denying remand of removed action based on availability of attorneys' fees under New Mexico Unfair Claim Practice Act and Unfair Trade Practice Act); *Travelers Indemnity Co. v. Sotheby's Holding, Inc.*, Civ. No. 02-691 LFG/DJS Memorandum Opinion and Order Denying Plaintiffs' Motion for Remand, at 3 (D.N.M. Oct. 25, 2002) (finding jurisdictional amount established by claim for treble damages and attorneys' fees under Unfair Trade Practices Act).

27. Thus, even when considering only the claims for attorneys' fees, punitive damages, and treble damages, there is obviously more than $75,000 in controversy in the present case. *See Jamison, supra; Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995) ("[I]n view of awards rendered in similar cases . . . [the] defendant has met its burden

of producing sufficient evidence [on removal] to convince this court that the amount in controversy is greater than" the jurisdictional amount exclusive of costs).

### C. The Citizenship Of Lydick Should Be Ignored Because Lydick Has Been Fraudulently Joined

28. Fraudulent joinder is an exception to the requirement of complete diversity under 28 U.S.C. §§ 1332, 1441, and 1446. The doctrine instructs a court to ignore the citizenship of a party who either has "no cause of action" stated in the complaint or who "in fact" has no cause of action. *Smoot v. Chicago, Rock Island and Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967); *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (quoting *Smoot* for the Tenth Circuit's fraudulent joinder standard).

29. A party is fraudulently joined when the plaintiff has "no cause of action" against the party. *See Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013). A fraudulently joined party is dismissed and the court retains jurisdiction over the case. *Id.*

30. Fraudulent joinder has been found on a broad array of substantive and procedural grounds where a party's claims as filed showed that it in fact had "no cause of action." *Brazell*, 525 F. App'x at 882 (finding fraudulent joinder where the plaintiff's claim against defendant was not ripe); *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 881 (10th Cir. 1967) (finding fraudulent joinder where the plaintiff asserted negligence by a railroad employee whose employment was terminated months before plaintiff's alleged injury); *Karnatcheva v. JP Morgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (finding fraudulent joinder because plaintiffs did not have standing under Minnesota law); *Witherspoon v. Bayer Healthcare Pharm. Inc.*, 2013 US Dist. Lexis 163617 (E.D. Mo. Nov. 18, 2013) (finding fraudulent joinder of non-diverse plaintiff because plaintiff's claim was time-barred). *Rivera v. Smith's Food & Drug Centers*, CIV 05-1049 RB/ACT, 2006 WL 4891275 (D.N.M. Feb. 16, 2006) (finding fraudulent joinder of two defendants in employment case where the defendants were not named in the underlying discrimination charge).

31.     Here, it is clear on the face of the Complaint that there is no possibility for Aztec's indemnity claim against Lydick.  The right to indemnity and the corresponding obligation to indemnify generally spring from express or implied contract.  Additionally, indemnification can arise by operation of law to prevent an inequitable result.  Aztec's claim against Lydick is that it negligently performed its surveying duties, such that *IF* Aztec is found to be liable to Commonwealth, Aztec is entitled to indemnification from Lydick.  In other words, Aztec's single claim against Lydick is entirely derivative of, and cannot ripen until and unless Aztec is first found liable to Commonwealth.  This claim is not ripe for adjudication.

32.     Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43,*3357, n. 18 (1993)). Ripeness concerns "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* at 808. Importantly, Aztec does not allege that it has become legally obligated to pay any damages to Commonwealth.  To the contrary, Aztec's declaratory judgment claim against Commonwealth makes it clear that no such obligation exists.  Because Aztec has not become legally obligated to pay any damages to Commonwealth, Aztec's cause of action against Lydick seeking indemnification for such damages is – at best – a premature request that the Court issue a theoretical judgment with regard to indemnity for an obligation that does not exist and may never exist.  The ripeness doctrine prohibits such speculative action.

33.     Because Aztec has not become legally obligated to pay any damages to Commonwealth, there is no possibility that Aztec's claim against Lydick for indemnification can succeed. *Brazell*, 525 F. App'x at 882.  Lydick has, therefore, been fraudulently joined and its citizenship must be ignored for purposes of removal.

**D. The Citizenship of Commonwealth Should Be Disregarded Because Aztec's Claim Against It Has Been Procedurally Misjoined**

34.     Commonwealth has been misjoined in this case and its citizenship should be disregarded pursuant to the doctrine of procedural misjoinder.  It should not be considered when determining this Court's diversity jurisdiction, in order to preserve Maxum's right to remove. Courts ignore the citizenship of misjoined parties for the purposes of determining whether the parties are diverse. *See, e.g., Ullman v. Safeway Ins. Co.*, No. CIV 13-0595 JB/RHS, 2013 WL 7141522, *31 (D.N.M. Dec. 31, 2013); *Stone v. Zimmer*, No. 09-80252-CIV, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 146-48 (S.D.N.Y. 2001); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ.A. 98-20478, 1999 WL 554584, at *2 (E.D. Pa. July 16, 2009); *Lyons v. The Am. Tobacco Co., Inc.*, No. Civ.A. 96-00881, 1997 WL 809677, at *4 (S.D. Ala. Sept. 30, 1997).

35.     While the 10th Circuit has not expressly adopted the doctrine of procedural misjoinder (also called "fraudulent misjoinder") as originally set forth in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1353, 1360 (11th Cir. 2000), the 10th Circuit has considered the doctrine with approval.  *See Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010) (finding that "[t]here may be good reasons to adopt procedural misjoinder,... [b]ut we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case") (emphasis added).  This District first addressed the fraudulent misjoinder doctrine in the case of *Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537 (D.N.M. Dec. 1, 2013) (Browning, J.).  After determining that the doctrine is "on a much firmer statutory basis – and thus constitutional and jurisdictional basis – than fraudulent joinder" based on supporting language found in the removal statutes, the Court explicitly adopted the doctrine in cases – like this one – "where the nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action." *Id*. at *32, *37.  When "the claims against the nondiverse defendant are misjoined, the Court 'drops' -- ignores, never discusses again -- the party, rather than dismisses a claim." *Id*. at *36.  The Court declined to

adopt the "egregiousness" standard adopted by other federal courts, and concluded that "the proper standard is simply whether the parties are improperly joined" under a "normal [federal] rule 20 analysis." *Id.* at *33, *37; *see also McGrath v. City of Albuquerque*, 2015 WL 4997153, at * 67 (D.N.M. July 31, 2015) (noting that this District "has adopted the doctrine [of procedural misjoinder] and applied it in two cases."); *Ullman*, 2013 WL 7141522, *31.

36. Here, Aztec's contract claim against Commonwealth do not arise out of the same transaction or occurrence as his insurance coverage claim against Maxum, and Aztec does not allege joint, several, or alternative liability against Commonwealth and Maxum. Moreover, the essential elements of the declaratory judgment claim against Commonwealth and the coverage claim against Maxum are not the same. The critical components of the claims, including the evidence required to prove each claim, are legally and factually distinct. *See Stone*, 2009 WL 180990, at *4. For instance, the claim against Commonwealth will require evidence on the underlying survey and interpretation of the contract between Aztec and Commonwealth – none of which is related to the claims against Maxum. Similarly, Aztec's claims against Maxum deal with interpretation of specific contract provisions that are not at issue in the claim against Commonwealth. As a result, any liability found against Maxum would not be a basis for liability as to Commonwealth, and separate liability could be found as to each. Whether Maxum breached its duties to defend and indemnify has absolutely no determinative effect on whether Aztec is liable to Commonwealth under a contract to which Maxum is not a party. Because Commonwealth has been misjoined, its consent to removal is not necessary and has no effect on Maxum's ability to remove. *See In re Guidant Corp*, 2007 WL 2572048, at *4; cf. Roberts v. Palmer, 354 F. Supp. 2d 1041, 1046 (E.D. Mo. Jan. 27, 2005); *also* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been *properly joined* and served must join in or consent to the removal of the action.") (emphasis added).

37. Maxum has satisfied all other requirements for removal and reserves the right to amend this Notice of Removal. If any questions of the propriety of this removal should arise, Maxum requests the opportunity to present a brief and argument in support of this removal

WHEREFORE, Maxum gives notice that the matter bearing civil number D-101-CV-2015-02640 in the First Judicial District Court in and for Santa Fe County, State of New Mexico, is removed to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1441.

Respectfully submitted this 10th day of February, 2016.

                MODRALL, SPERLING, ROEHL, HARRIS
                  & SISK, P.A.

                By: */s/ Alex C. Walker*
                    Jennifer A. Noya
                    Alex C. Walker
                    Post Office Box 2168
                    Bank of America Centre, Suite 1000
                    500 Fourth Street, N.W.
                    Albuquerque, New Mexico 87103-2168
                    Telephone: (505) 848-1800

                *Attorneys for Maxum Indemnity Company*

WE HEREBY CERTIFY that on this 10th day of February 2016, we filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

    Julie J. Vargas
    HUNT & DAVIS, P.C.
    2632 Mesilla NE
    Albuquerque, NM 87110
    505.881.3191

    David M. Houliston
    LAW OFFICE OF DAVID M. HOULISTON
    500 Tijeras Ave. NW
    Albuquerque, NM 87102-3133

    *Attorneys for Plaintiff*

MODRALL, SPERLING, ROEHL, HARRIS
  & SISK, P.A.

By:*/s/ Alex C. Walker*
    Alex C. Walker

W2646459.DOCX