IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AZTEC ABSTRACT & TITLE INSURANCE, INC.,
a New Mexico Corporation,

    Plaintiff,

vs.                                                    Civ. No. 16-103 KG/KBM

MAXUM SPECIALTY GROUP &
MAXUM INDEMNITY COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Maxum's Memorandum Motion for Summary Judgment (Motion for Summary Judgment), filed January 11, 2017. (Doc. 34). Plaintiff filed a response on February 3, 2017, and Defendant Maxum Indemnity Company (Maxum)[1] filed a reply on February 16, 2017. (Docs. 37 and 38). Having considered the Motion for Summary Judgment, the accompanying briefing, and the relevant evidence, the Court grants the Motion for Summary Judgment.

*A. Background*

*1. Relevant Facts Viewed in the Light Most Favorable to Plaintiff*[2]

Plaintiff provides title and escrow services for real estate closings and is an agent for title insurance underwriter Commonwealth Land Title Insurance Company (Commonwealth). (Doc. 1-1) at 19-22; (Doc. 34-1) at 2-3, depo. at 9-10. Under the agency agreement with

---

[1] Maxum notes that Plaintiff incorrectly identified it as "Maxum Specialty Group" and "Maxum Indemnity Company." (Doc. 34) at 1.

[2] Unless otherwise noted, these facts are undisputed. Indeed, Plaintiff admits Maxum's undisputed facts presented in the Motion for Summary Judgment. (Doc. 37) at 2. *See also* (Doc. 34) at 2-6, ¶¶ 1-24 (Maxum's undisputed material facts).

Commonwealth, if Plaintiff is grossly negligent in its provision of title services, Plaintiff may be liable to Commonwealth for any loss it suffers as a result of the gross negligence. (Doc. 1-1) at 20. This lawsuit involves Commonwealth's request for indemnification from Plaintiff for an error in its provision of title services.

      *a. Chronology of Events*

In 2008, Sweetwater Farms (Sweetwater) obtained a mortgage from Zions First National Bank (Zions) to encumber a parcel of land next to a peanut processing plant. (Doc. 34) at 3, ¶ 5; (Doc. 34-1) at 4, depo. at 18-19. Plaintiff's closing officer, Jennifer Hardin, handled the closing of the transaction, and Plaintiff issued a title insurance policy underwritten by Commonwealth. (Doc. 34-1) at 2 and 4, depo. at 9, 18-19.

In 2009, Sweetwater obtained a mortgage from Excel National Bank (Excel) to encumber the property upon which the peanut processing plant was situated. *Id.* at 4, depo. at 19. Hardin, likewise, handled the closing of that transaction for Plaintiff, and Plaintiff issued a title insurance policy underwritten by Commonwealth. *Id.*

In December 2010, Excel sought to foreclose on its Sweetwater mortgage and discovered that Zions was asserting that its Sweetwater mortgage was senior to a portion of the property where the peanut processing plant was located, property subject to the Excel mortgage. (Doc. 34) at 3, ¶ 7; (Doc. 34-1) at 17. Consequently, in a letter dated December 22, 2010, Excel notified Commonwealth of Zions' claim to Excel's property and indicated that it had contacted Plaintiff about the problem, which Plaintiff was researching. (Doc. 34-1) at 17. This letter was copied to Hardin. *Id.* Under the terms of the title insurance policy, Commonwealth provided Excel with counsel to defend its interest in the disputed property. *Id.* at 33.

In February 2011, Commonwealth advised Plaintiff, by letter, about the claim Excel presented to Commonwealth. *Id.* at 19. Commonwealth requested that Plaintiff provide a copy of its file on the Sweetwater transactions and any other information which would help Commonwealth's "investigation or resolution of this matter." *Id.*

In March 2011, Plaintiff's president, Bessie Engram, responded to Commonwealth explaining that a mistake in the legal descriptions in the two Sweetwater transactions occurred and that "[r]e-recording the Zions National Bank mortgage with corrected legal [description] or filing a modification with the corrected legal [description] of that mortgage should remedy the problem." *Id.* at 18. Plaintiff also enclosed the requested Sweetwater files. *Id.*

Engram admits that filing a mortgage with an incorrect legal description of the property is a negligent act. *Id.* at 8, depo. at 40-41. Moreover, Engram knew, in March 2011, that it was possible that the error in legal descriptions could result in a loss of collateral. *Id.* at 8, depo. at 40.

In June 2012, Plaintiff, through Engram, applied for professional errors and omissions (E & O) liability insurance with Maxum. *See id.* at 21. Question 38 of the application asks whether the applicant is "aware of any incident or circumstance which MAY RESULT in a CLAIM being made against the Applicant…?" *Id.* at 28. Plaintiff responded "no." *Id.* Maxum subsequently issued the E & O insurance policy with an inception date of July 1, 2012. *Id.* at 36.

In October 2012, Engram learned, from Hardin, about the foreclosure proceeding involving the Sweetwater property and that there was an issue with respect to Zions and Excel's mortgages, i.e., a possible overlap of the mortgages. (Doc. 37-1) at 1, depo. at 26, 28, and 29. In fact, Hardin testified at the October 2012 trial of the foreclosure proceeding. (Doc. 34-1) at 8, depo. at 41. In December 2012, the state court determined in the foreclosure proceeding that

Zions had the first lien on the disputed property while Excel had a second lien on that property. *Id.* at 9, depo. at 46. Excel, thus, lost the value of the collateral with respect to the disputed property. *Id.*

After Hardin testified at the foreclosure trial in October 2012, Engram had concerns about whether Plaintiff erred with respect to the Sweetwater mortgages. (Doc. 38-1) at 4, depo. at 44. Consequently, prior to the state court's determination in December 2012, Engram obtained a copy of the foreclosure trial transcript and asked Hardin if there was a claim against Plaintiff. *Id.* at 4, depo. at 42, 44. Hardin told Engram "no." *Id.* at 4, depo. at 44. Following the 2012 foreclosure trial, Engram waited for Commonwealth to contact her. *Id.* at 4, depo. at 45. Engram explained at her deposition that, "If there was going to be a claim against me, they would have made it." *Id.*

As a result of the state court's decision, Commonwealth indemnified Excel for "the loss incurred as a result of a portion of [Excel's] Insured Property being subject to the superior Zions Mortgage." (Doc. 34-1) at 33. Commonwealth resolved Excel's claim by paying Excel the title insurance policy limit of $275,000.00. *Id.*

In December 2014, Commonwealth wrote a letter to Plaintiff asserting that Plaintiff "knew or should have known that the legal descriptions were conflicting" and that the conflicting legal descriptions resulted in a loss to Excel and Commonwealth. *Id.* Hence, Commonwealth demanded that Plaintiff indemnify it for the losses and expenses it incurred due to the conflicting legal descriptions. *Id.* Commonwealth suggested that Plaintiff file a claim with its E & O insurer, Maxum, for indemnification. *Id.* Engram acknowledged she had received "some" correspondence from Commonwealth prior to the December 2014 letter. *Id.* at 11-12, depo. at 57-58.

4

In January 2015, Plaintiff made a claim to Maxum for indemnification. *Id.* at 34. In addition to indemnification, Engram expected Maxum to defend Plaintiff from a possible lawsuit by Commonwealth. *Id.* at 13, depo. at 68. In anticipation of such a lawsuit, Plaintiff retained counsel. *Id.* at 13, depo. at 67. Commonwealth, however, has not filed any legal proceedings against Plaintiff in this matter. *Id.* at 11, depo. at 56. Indeed, Commonwealth has agreed not to sue Plaintiff for negligence with respect to the Excel mortgage. *Id.* at 12, depo. at 60.

In October 2015, Maxum denied coverage explaining that the E & O insurance policy did not apply. *Id.* at 34. Maxum specifically cited the prior knowledge exclusion provision which states that the policy does not apply to "[a]ny 'claim' arising out of or resulting from any 'wrongful act'" which the insured "had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with [Maxum], and which may result in a 'claim.'" *Id.* at 37. According to Maxum, Plaintiff was aware of the legal descriptions error in 2010 and 2011. *Id.* at 38. Maxum, therefore, concluded that Plaintiff "was aware of wrongful acts which might result in a claim against it prior to July 1, 2012," the inception date of the E & O insurance policy. *Id.*

### b. Other Relevant Provisions of the E & O Insurance Policy

The policy provision on the duty to defend states that Maxum has the "duty to defend any 'insured' against any 'suit' seeking … 'damages.'" (Doc. 34-2) at 2. "Damages" are those sums an insured is "legally obligated to pay … because of a 'wrongful act' in the rendering of or failure to render 'professional services' by any 'insured'…." *Id.* Maxum, however, has no duty to defend if "this insurance does not apply." *Id.* Maxum, at its discretion, may "investigate any 'wrongful act' and settle any 'claim' or 'suit' that may result." *Id.*

The policy further defines "damages" as "compensation only in the form of money for a 'claim' to which this insurance applies." *Id.* at 4. A "claim," in turn, is defined as "a written or verbal demand received by any 'insured' for money…." *Id.* A "suit" is "a civil proceeding in which 'damages' because of the rendering of or failure to render 'professional services' to which this insurance applies are alleged." *Id.* at 5. A "wrongful act" is "any actual or alleged negligent act, error or omission in the rendering or failure to render 'professional services.'" *Id.*

*2. The Complaint Against Maxum*

In December 2015, Plaintiff filed suit against Maxum, Commonwealth, and a survey company in state court. (Doc. 1-1) at 7. Maxum removed the case to federal court in February 2016. (Doc. 1). Only Maxum remains as a Defendant. *See* Stipulated Order of Dismissal of Claims Against Defendants Commonwealth Land Title Insurance Co. and Lydick Engineers & Surveyors. (Doc. 18).

In Count III of the Complaint, Plaintiff alleges that Maxum breached the E & O insurance policy by denying Plaintiff's request for a defense and indemnification. *Id.* at 13, ¶ 48.

In Count IV, Plaintiff alleges that Maxum breached the implied covenant of good faith and fair dealing by (1) not applying the E & O insurance policy to the Commonwealth matter, (2) not "promptly and fairly investigat[ing], process[ing], determin[ing], and decid[ing] Plaintiff's claims," and (3) not providing prompt coverage under the policy. *Id.* at 14, ¶ 56. The parties refer to this claim as the bad faith claim.

Finally, in Count V, Plaintiff alleges that Maxum violated the New Mexico Unfair Claims Practices Act by (1) "[f]ailing to acknowledge and act reasonably promptly" with respect to Plaintiff's claim for coverage, (2) "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of" Plaintiff's claim for coverage, (3) "[f]ailing to

6

attempt in good faith to effectuate prompt, fair and equitable settlements" of Plaintiff's claim for coverage "in which liability has become reasonably clear," (4) "[f]ailing to promptly provide [Plaintiff] a reasonable explanation of the basis" for denying Plaintiff's claim for coverage, and (5) "[f]ailing and refusing to mediate, resolve, and settle" Plaintiff's claim for coverage. *Id.* at 15-16, ¶ 64.

*B. The Motion for Summary Judgment*

Maxum moves for summary judgment on all of Plaintiff's claims against it. Maxum asserts that it is entitled to summary judgment on the breach of contract claims for two reasons. First, Maxum argues that it did not owe Plaintiff a duty to defend because there was no "suit," as defined under the E & O insurance policy, which "legally obligated" Plaintiff "to pay as 'damages' any sum for any wrongful act in the rendering of or failure to render professional services." (Doc. 34) at 8. Second, Maxum argues that Plaintiff's request for indemnification is excluded under the E & O insurance policy's prior knowledge provision because Plaintiff, prior to the inception of the E & O insurance policy, had knowledge of a wrongful act which could result in a claim by Commonwealth.

Maxum further contends that it is entitled to summary judgment on the bad faith and the New Mexico Unfair Claims Practices Act claims for two reasons. Maxum specifically argues that there are no bases for those claims because (1) it properly denied insurance coverage, and (2) in the event the Court determines that Maxum improperly denied insurance coverage, its coverage position, nonetheless, was reasonable as a matter of law.

Plaintiff opposes the Motion for Summary Judgment in its entirety.

*C. Summary Judgment Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*D. Discussion*

    *1. Breach of Contract Claims (Count III of the Complaint)*

        *a. Whether Maxum had a Duty to Defend Plaintiff*

Maxum argues first that it did not owe Plaintiff a duty to defend under the E & O insurance policy because that duty only arises if there is a "suit" seeking sums that Plaintiff is "legally obligated to pay" due to a wrongful act in either "the rendering of or failure to render 'professional services.'" *See* (Doc. 34-2) at 2. It is undisputed that no one has sued Plaintiff for indemnification arising from the overlapping legal descriptions in the Sweetwater mortgages. The question, then, is whether the term "suit," defined as a "civil proceeding," unambiguously means only a civil lawsuit filed in a court of law. The Court recognizes that if an insurance contract "is unambiguous, the court is bound to enforce its terms" and construes an unambiguous insurance contract "in [its] usual and ordinary sense." *Sanchez v. Herrera*, 1989-NMSC-073, ¶

8

20, 109 N.M. 155; *Miller v. Triad Adoption & Counseling Servs., Inc.*, 2003-NMCA-055, ¶ 8, 133 N.M. 544.

In New Mexico, an "insurer is obligated to defend" if an "injured party's complaint states facts which bring the case within the coverage of the policy" or the complaint, at least, alleges facts tending "to show an occurrence within the coverage." *Found. Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, ¶ 6, 97 N.M. 618 (citation omitted). If a duty to defend does not arise from the face of the complaint, an insurer must determine whether it has a duty to defend by investigating "the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim…." *G & G Services, Inc. v. Agora Syndicate, Inc.* 2000-NMCA-003, ¶ 23, 128 N.M. 434. In other words, "[a]n insurer's duty to defend arises out of the nature of the allegations in the complaint." *Miller*, 2003-NMCA-055 at ¶ 9. This New Mexico caselaw indicates that a lawsuit must be filed in a court before a duty to defend arises.

Furthermore, the Fifth Circuit Court of Appeals has held that policy language, identical to that in this case describing when a duty to defend arises and defining "suit," is unambiguous and does not impose a duty to defend "in the event [only] a 'claim' is made." *Meyers Warehouse, Inc. v. Canal Indem. Co.*, 614 F. App'x 719, 722–23 (5th Cir. 2015); *see also Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 532, 655 N.E.2d 842, 847 (1995), *as modified on denial of reh'g* (Oct. 2, 1995) (holding that "duty to defend extends only to suits and not to allegations, accusations or claims which have not been embodied within the context of a complaint"). Additionally, the Tenth Circuit Court of Appeals has held that a mandatory civil pre-litigation process was not a "civil proceeding," i.e., a "suit," because "noncompliance [with the civil pre-litigation process] does not result in any adverse judgment or obligation but rather

9

imposes limited consequences in subsequent litigation." *Cincinnati Ins. Co. v. AMSCO Windows*, 593 F. App'x 802, 809 (10th Cir. 2014); *see also Recall Total Info. Mgmt., Inc. v. Fed. Ins. Co.*, 147 Conn. App. 450, 460, 83 A.3d 664, 671 (2014), *aff'd,* 317 Conn. 46, 115 A.3d 458 (2015) (acknowledging Connecticut Supreme Court holding that "demand letter from a potential plaintiff in a personal injury action is a claim" and that "demand letter falls short of a suit, broadly defined as 'an attempt to recover a right or claim through legal action' ... because it has no immediate legal effect and therefore cannot be considered legal action" (citation omitted)). These cases hold that a mere "claim" or demand for money is insufficient to trigger the duty to defend and that a "civil proceeding" is one that imposes a "judgment" or legal obligation. In other words, these cases, like the New Mexico cases, support the proposition that the duty to defend arises only if a lawsuit has been filed in a court.

Plaintiff, nevertheless, cites *G & G Services, Inc.* to argue that, despite the lack of a lawsuit, Maxum should have investigated "the underlying claim of Commonwealth in 2014 in order to determine if it had a duty to defend…." (Doc. 37) at 4. *See* 2000-NMCA-003, ¶¶ 21, 23, and 24, 128 N.M. 434. As quoted above, the New Mexico Court of Appeals in *G & G Services, Inc.* held that an insurer must investigate "the facts and circumstances <u>underlying the complaint against its insured</u> … in order to determine whether it has a duty to defend." *Id.* at ¶ 23 (emphasis added). In justifying its holding requiring such an investigation beyond the allegations in a complaint or pleading, the New Mexico Court of Appeals in *G & G Services, Inc.* stated:

> An insurance company "cannot construct a formal fortress of the third party's <u>pleadings</u> and retreat behind its walls. The <u>pleadings</u> are malleable, changeable and amendable…. In light of the … plasticity of modern <u>pleading</u>, we should hardly designate the third party as the arbiter of the policy's coverage."

*Id.* at ¶ 27 (emphasis added and citation omitted). The New Mexico Court of Appeals further stated:

> One of the basic reasons for purchasing liability insurance is to relieve the insured of the <u>cost of litigation</u>. In purchasing insurance an insured may reasonably expect that he would stand a better chance of vindication if supported by the resources and expertise of his insurer than if compelled to handle and finance the presentation of <u>his case</u>.

*Id.* at ¶ 28 (emphasis added and internal citation omitted). The New Mexico Court of Appeals then concluded that "[i]f a reasonable investigation would include seeking information from other sources apart from the <u>complaint</u>, the insurer should seek such information." *Id.* at ¶ 29 (emphasis added). Subsequent to *G & G Services, Inc.,* the New Mexico Court of Appeals reiterated, as already quoted *supra*, that "[a]n insurer's duty to defend arises out of the nature of the allegations in the <u>complaint</u>" while recognizing that "[k]nown but unpleaded facts may bring a claim within the coverage of the policy at the beginning of the <u>litigation or at a later stage</u>." *Miller*, 2003-NMCA-055 at ¶ 9 (emphasis added). Contrary to Plaintiff's argument, *G & G Services, Inc.* clearly requires pending litigation to trigger the duty to defend and the accompanying duty to investigate whether a duty to defend exists, a situation not present here.

Plaintiff also cites *Miller v. Elite Ins. Co.*, a California appellate case, for the proposition that "[t]he duty to defend, where it exists, exists at the prelitigation" stage considering "that a large percentage of insurance claims are settled without litigation." 100 Cal. App. 3d 739, 755, 161 Cal. Rptr. 322 (Ct. App. 1980). The California Supreme Court, however, later rejected that proposition holding that "[t]he duty to defend arises when the insured tenders defense of the third party <u>lawsuit</u> to the insurer." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 886, 959 P.2d 265, 285 (1998), *as modified* (Sept. 23, 1998) (emphasis added and citation omitted). The California Supreme Court explained that "[p]rior to the filing of a complaint, there is nothing for the insured *to tender defense of,* and hence no duty to defend arises." *Id.* at 886, 959 P.2d at 286.

11

Additionally, Plaintiff cites *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.* as an example where a court found that an insurer had a prelitigation duty to defend. *See* 308 Conn. 760, 67 A.3d 961 (2013). Plaintiff specifically quotes the portion of the case wherein the Connecticut Supreme Court notes the following:

> In *Alderman,* this court extended the rule enunciated in *Missionaries* to situations in which the insured settled claims before the claimant had filed an action. The court reasoned that requiring the insured to remain passive subsequent to a clear denial of coverage "could serve no useful purpose: it would have been a gesture of futility, and would have fostered unnecessary litigation, with attendant delays and additional expenses." Accordingly, the court in *Alderman* recognized that the duty to defend may arise before an action is initiated by the claimant. "Where an insurer refuses to acknowledge any duty or obligation arising under the contract of insurance, the insured is in much the same position whether or not suit has actually been filed." In the context of presuit demands by an insured, the insurer's duty is triggered when the demand is "sufficiently detailed for the defendant to discern whether the allegations ... [are] within the scope of the plaintiff's insurance coverage."

*Id.* at 806-7, 67 A.3d at 993-94 (quoting *Alderman v. Hanover Ins. Group,* 169 Conn. 603, 610-612 (1975), and *R.T. Vanderbilt Co., Inc. v. Continental Casualty Co.,* 273 Conn.448, 471 (2005)).

*Capstone Bldg. Corp.*, however, is not persuasive authority for two reasons. First, the above discussion pertains to the situation where an insured party is engaged in mediation on a claim and seeks a defense from an insurer with respect to the mediation. Both *Capstone Bldg. Corp.* and *Alderman* involved insureds who settled claims before any party filed a lawsuit and, therefore, had to pay a settlement amount. In this case, there is no allegation or evidence of mediation between Plaintiff and Commonwealth leading to a settlement which requires Plaintiff to pay Commonwealth any sum of money or damges. Consequently, *Capstone Bldg. Corp.* and *Alderman* are distinguishable from this case.

Second, in *R.T. Vanderbilt Co., Inc.*, cited by *Capstone Bldg. Corp.*, the Connecticut Supreme Court held that a prelitigation Potentially Responsible Party (PRP) letter from the

United States Environmental Protection Agency (EPA), written pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), to an insured constitutes a "suit." 273 Conn. at 461, 870 A.2d at 1058. Subsequent to *Capstone Bldg. Corp.*, Connecticut courts have held that the reasoning in *R.T. Vanderbilt Co., Inc.* does not apply outside the context of PRP letters.

> The Court [in *R.T. Vanderbilt Co. Inc.*] emphasized that the letter was more than just the type of demand letter the Plaintiff claims here is sufficient to constitute an "action" within the meaning of the policy. The Court stated: "We emphasize that our determination in the present matter is predicated on CERCLA's extremely burdensome provisions and the immediate legal consequences that arise upon the receipt of a PRP letter. Thus, we find that the consequences of the receipt of the EPA letter are so substantially equivalent to the commencement of a lawsuit that a duty to defend arises immediately. The EPA letter was not the equivalent of a conventional demand letter…."

*Riggs v. Standard Fire Ins. Co.*, 2006 WL 416201, at *2 (Conn. Super. Ct.); *see also Knapp v. New London Cty. Mut. Ins. Co.*, 2015 WL 3974384, at *6 (Conn. Super. Ct.) (quoting *Riggs*, 2006 WL 416201, at *2). A PRP letter is not at issue here. Hence, *R.T. Vanderbilt Co., Inc.* is, likewise, distinguishable from this case.

The state of the law as reflected by the above cases, and in particular the New Mexico cases, shows that the duty to defend as described in the E & O insurance policy does not arise until an insured has been sued in a civil lawsuit. Because Commonwealth has not sued Plaintiff and does not plan to do so, Maxum did not, as a matter of law, have a duty to provide Plaintiff with a defense, let alone an obligation to conduct an investigation to determine if it had a duty to defend.

In addition to a "suit," the duty to defend under the E & O insurance policy requires that the suit seek damages which the insured is "legally obligated to pay … because of a 'wrongful act' in the rendering of or failure to render 'professional services'…." (Doc. 34-2) at 2. It is undisputed that there has been no "suit" or proceeding, of any kind, legally obligating Plaintiff to

indemnify Commonwealth. For this additional reason, Maxum was not required, as a matter of law, to provide a defense to Plaintiff.

For all of the foregoing reasons, Maxum is entitled to summary judgment on the breach of contract claim based on a failure to provide a defense.

     *b. Whether Plaintiff's Request for Indemnification is Excluded Because of Prior Knowledge of a Wrongful Act*

Maxum further argues that the E & O insurance policy did not provide Plaintiff coverage because, prior to the inception of the E & O insurance policy in July 2012, Plaintiff had "knowledge of or information related to" the overlapping legal descriptions "which may result in a 'claim'" by Commonwealth. (Doc. 34-2) at 3. Plaintiff asserts that although correspondence between Commonwealth and Plaintiff prior to July 2012 "set forth Commonwealth's belief that [Plaintiff] could be responsible for the errors in the land transaction," Commonwealth did not present Plaintiff a "claim," i.e., demand for money, until Commonwealth's December 2014 demand letter, written well after the inception of the E & O insurance policy. (Doc. 37) at 5. Plaintiff also argues that Engram's deposition testimony creates a genuine issue of material fact on this issue.

A prior knowledge exclusion applies if, prior to the inception of the policy, the insured "had knowledge of an error that <u>might</u> have resulted in a demand for damages against it." *McDowell Bldg., LLC v. Zurich Am. Ins. Co.*, 2015 WL 1656497, at *5 (D. Md.) (emphasis added). Thus, a prior knowledge exclusion like the one in this case, which refers to knowledge of wrongful acts "which <u>may</u> result in a 'claim,'" should not be interpreted to "exclude only coverage for ripened claims that had already been made or were certain to be made as of the time of policy inception." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 962, 977 (8th Cir. 2013) (emphasis added) (interpreting prior knowledge exclusion provision "that excluded

14

coverage for claims 'based upon or arising out of any alleged act, error, omission or circumstance <u>likely</u> to give rise to a Claim that an Insured had knowledge of prior to the effective date of the policy'" (emphasis added)). Additionally, the prior knowledge exclusion does not apply if the matter was settled or fully resolved prior to the policy inception date, because there would be no later demand for money or a claim under the policy. *See id.* (holding that prior knowledge exclusion does not apply if insured could have believed that matter was settled or fully resolved so that later-filed lawsuit would surprise insured); *see also McDowell Bldg., LLC*, 2015 WL 1656497, at *6 (noting that prior knowledge provision does not apply if insured had prior knowledge of error but "had been assured that it would not be subject to suit").

It is undisputed in this case that (1) in December 2010, Plaintiff knew, through Hardin, that Excel notified Commonwealth of Zions' claim to the disputed property, which Plaintiff apparently researched; (2) in February 2011, Plaintiff knew that Excel presented a claim to Commonwealth, and Commonwealth requested that Plaintiff provide a copy of its file on the Sweetwater transactions and any other information which would help Commonwealth's "investigation or resolution of this matter;" (3) in March 2011, Engram responded to Commonwealth by enclosing the requested documentation, explaining that a mistake in the legal descriptions in the two Sweetwater transactions occurred, and suggesting that "[r]e-recording the Zions National Bank mortgage with corrected legal [description] or filing a modification with the corrected legal [description] of that mortgage should remedy the problem;" (4) Engram further knew in March 2011 that it was possible that the error in legal descriptions could result in a loss of collateral; and (5) Engram admits that filing a mortgage with an incorrect legal description of the property is a negligent act. A reasonable jury could find from the above undisputed evidence that prior to July 2012 Plaintiff had knowledge of a negligent act or error made by one of its

15

employees, i.e., a "wrongful act," that "may result" in a loss of collateral, i.e., a "claim" or demand for money.

Plaintiff seems to argue, however, that the potential "claim" in this case would be a demand for money from Commonwealth for a "gross" negligent act, as provided in the agency agreement between Plaintiff and Commonwealth. Plaintiff notes that Commonwealth's demand letter did not specify that the legal descriptions error was a grossly negligent act. The E & O insurance policy's definition of a "claim" does not state that the claim must be valid. The "may result in a 'claim'" language in the prior knowledge exclusion provision, likewise, does not require that the insured determine the validity of the claim beforehand, i.e, that the "wrongful act" will result in a claim. Also, the undisputed evidence demonstrates that prior to Commonwealth's December 2014 demand letter, Engram had concerns that Commonwealth would sue Plaintiff, presumably under the agency agreement for gross negligence. A reasonable jury viewing this evidence in the light most favorable to Plaintiff could still find that prior to July 2012 Plaintiff had knowledge of a negligent act or error made by one of its employees, i.e., a "wrongful act," that "may result" in a loss of collateral, i.e., a "claim" or demand for money.

Additionally, Plaintiff has not presented any facts showing that, prior to July 2012, Commonwealth had assured Plaintiff it would not sue it over the legal descriptions error or that the matter was somehow settled or resolved. Although Engram suggested to Commonwealth in March 2011 to re-record the Zions' mortgage with the correct legal description as a way to remedy the problem, Plaintiff has not provided any evidence that this was done or that such an action would have necessarily prevented Excel from incurring damages as a result of the legal descriptions error. Viewing all of the above circumstances in the light most favorable to

16

Plaintiff, no reasonable jury could find that the prior knowledge exclusion did not apply and that the E & O insurance policy, therefore, covered Plaintiff's indemnification claim.

Alternatively, Plaintiff contends that it "had a reasonable expectation of coverage and at a minimum an adequate investigation into the underlying claim and the facts surrounding the issue of prior knowledge." (Doc. 37) at 5. To support this reasonable expectation theory, Plaintiff again cites *G & G Services, Inc.* and its discussion of the insurer's obligation to investigate the duty to defend. As discussed above, *G & G Services, Inc.* clearly refers to lawsuits when discussing the obligation to investigate the duty to defend. *See* 2000-NMCA-003, at ¶¶ 28 and 29. As before, the Court notes that there is no underlying lawsuit in this case. Moreover, *G & G Services, Inc.* examines the obligation to investigate the duty to defend, it does not examine any obligation to investigate an underlying claim or the applicability of a prior knowledge exclusion provision. *G & G Services, Inc.*, therefore, fails to support Plaintiff's reasonable expectation argument.

In New Mexico, "the doctrine of reasonable expectations applies if the language of an insurance policy would lead the insured to reasonably expect coverage" or "when the language of a policy is ambiguous." *Hinkle v. State Farm Fire & Cas. Co.*, 2013-NMCA-084, ¶18, 308 P.3d 1009. Under the reasonable expectations doctrine, the court asks what a "hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue." *Id.* With respect to an expectation of a defense, the wording of the E & O insurance policy indicates that a "suit" or civil proceeding which seeks damages, i.e., a legal obligation to pay "sums" because of a "'wrongful act' in the rendering of or failure to render 'professional services,'" is required before Maxum is obligated to provide a defense. *See* (Doc. 34-2) at 2. Even viewing the language of the policy in the light most favorable to Plaintiff, no reasonable

17

jury could find that a reasonable insured would glean from that language that Maxum owes a defense when the insured is not being sued or is not involved in some kind of civil proceeding which could "legally obligate" the insured to pay money for a wrongful act.

With respect to an expectation of indemnification, that expectation must be viewed in light of the prior knowledge exclusion provision which excludes a claim if the insured, prior to the inception of the insurance policy, had knowledge of a wrongful act that "may result in a 'claim.'" *See* (Doc. 34-2) at 3. Viewing the language of the prior knowledge exclusion in the light most favorable to Plaintiff, no reasonable jury could find that a reasonable insured would glean from the prior knowledge exclusion language that only a prior demand for money triggers that exclusion or that the potential claim must necessarily be determined valid, as Plaintiff argues. In addition, if the prior knowledge exclusion applies, the unambiguous language of the E & O insurance policy provides that Maxum does not owe the insured a defense. *Id.* at 2 (Maxum has no duty to defend against "'suit' seeking 'damages' for a 'wrongful act' to which this insurance does not apply.").

Furthermore, the E & O insurance policy unambiguously states that Maxum "may" at its "discretion" investigate a "wrongful act." (Doc. 34-2) at 2. A reasonable jury could not find that a reasonable insured would glean from that language that Maxum is required to investigate underlying indemnification claims or exclusions. Plaintiff's reasonable expectations arguments simply fail.

In sum, Maxum is entitled to summary judgment on the Count III breach of contract claims.

*2. Bad Faith and New Mexico Unfair Claims Practices Act (Counts IV and V of   the Complaint)*

Next, Maxum argues that it is entitled to summary judgment on the bad faith and New Mexico Unfair Claims Practices Act claims because the E & O insurance policy did not cover Plaintiff's claim for a defense and indemnification. Maxum further argues, in the alternative, that even if it erroneously denied Plaintiff a defense and indemnification under the E & O insurance policy, "not every mistaken denial of coverage constitutes bad faith or a statutory violation." (Doc. 34) at 11. Interestingly, Plaintiff does not respond to any of Maxum's arguments in favor of summary judgment on the claims of bad faith and under the New Mexico Unfair Claims Practices Act.

Courts have held that a court should dismiss bad faith and New Mexico Insurance Practices Act claims if there is no duty to defend and no right to indemnification under an insurance policy. *See, e.g., New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031 (D.N.M. 1997) ("Plaintiff's claims under the New Mexico Insurance Practices Act must necessarily be dismissed given the fact that Defendants had no duty to defend nor indemnify Plaintiff."); *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 20, 117 N.M. 82 ("Because Defendant was not contractually obligated to pay under the policy, it follows that Plaintiff cannot prevail on its claim that Defendant acted in bad faith…."). Even so, Plaintiff has not provided any facts from which a reasonable jury could find that Maxum acted in bad faith, knowingly engaged in "unfair and deceptive practices," or performed "unfair and deceptive practices" with sufficient "frequency as to indicate a general business practice." *See* UJI 13-1702, NMRA 1998 (2016 ed.) ("An insurance company does not act in bad faith by denying claim for reasons which are reasonable under the terms of the policy."); NMSA 1978, § 59A-16-

20 (2015 Repl. Pamp.) (defining unfair claims practices). For these reasons, Maxum is entitled to summary judgment on Counts IV and V of the Complaint.

IT IS ORDERED that

1. Maxum's Memorandum Motion for Summary Judgment (Doc. 34) is granted;

2. summary judgment will be entered in favor of Maxum on all of Plaintiff's claims against it (Counts III, IV, and V of the Complaint); and

3. those claims will be dismissed with prejudice, thereby, terminating this lawsuit.

_____
UNITED STATES DISTRICT JUDGE